UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JALEN PEARSON,

        Petitioner,

v.           CAUSE NO. 3:26cv74 DRL
                                3:24cr35 DRL

UNITED STATES OF AMERICA,

        Respondent.

OPINION AND ORDER

On January 20, 2026, Jalen Pearson filed a *pro se* petition to vacate his guilty plea and sentence under 28 U.S.C. § 2255. He asserts ineffective assistance of counsel. After reviewing the petition and record, the court denies the petition and denies a certificate of appealability.

BACKGROUND

During the summer 2023, Jalen Pearson sold large amounts of pure or nearly pure methamphetamine to confidential informants two times. The first sale was for a pound, and the second for two. On November 18, 2024, he pleaded guilty to one count of distributing five grams or more of methamphetamine with a plea agreement. *See* 21 U.S.C. § 841(a)(1).

The next February, the court sentenced Mr. Pearson to 97 months, a sentence at the bottom of his guideline range of 97-121 months. The presentence report assigned base offense level 34 because he distributed at least 500 grams of methamphetamine (nearly 1340 grams). U.S.S.G. §§ 2D1.1(a)(5), (c)(3). He shed two levels under the safety valve, U.S.S.G. §§ 2D1.1(b)(18), 5C1.2(a), and another three levels by accepting responsibility, U.S.S.G. § 3E1.1.

Mr. Pearson advances two arguments for ineffective assistance of trial counsel. First, he says he wouldn't have pleaded guilty but for his counsel's failure to advise him that his offense level would be based on an amount of methamphetamine greater than the five grams underlying his offense to which he pleaded. Second, he argues his counsel failed to object to the government's failure to abide by the safety valve provision in his plea agreement.

## STANDARD

In extraordinary situations, the court may vacate, set aside, or correct a prisoner's sentence. 28 U.S.C. § 2255(a); *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005). The writ of *habeas corpus* is secured by the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2. Historically, criminal defendants subject to a final conviction were entitled to *habeas corpus* relief only if the court that rendered the judgment lacked jurisdiction. *Ex parte Watkins*, 28 U.S. 193, 202 (1830). The writ has since been expanded to provide prisoners relief from various violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2255(a); *Danforth v. Minnesota*, 552 U.S. 264, 272 (2008); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). It is not a substitute for direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995).

When reviewing a § 2255 petition, the court examines the petition and the entire record. The court will hold an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); *see also* 28 U.S.C. § 2255(b). Allegations that prove merely "vague, conclusory, or palpably incredible" rather than detailed and specific will not suffice. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Likewise, when the petition and records conclusively show that the petitioner is not entitled to

2

relief, the court need not hold an evidentiary hearing. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). That is the case here.

## DISCUSSION

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (collecting cases). To show a violation of this right, a defendant must establish that (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

The law "presume[s] that counsel [was] effective, and a defendant bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (quotation omitted). The "proof of prejudice must be matched to the circumstances of the deficient performance and the relief sought." *Brock-Miller v. United States*, 887 F.3d 298, 312 (7th Cir. 2018).

This same two-part test applies to "challenges to guilty pleas based on ineffective assistance of counsel," *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), though in a refined way, *United States v. Smith*, 989 F.3d 575, 581 (7th Cir. 2021). To assess counsel's effectiveness at the plea stage, the performance prong remains largely unchanged: the petitioner "must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards." *Hurlow v. United States*, 726 F.3d 958, 966-67 (7th Cir. 2013). "[W]hen a defendant

3

claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 582 U.S. 357, 364-65 (2017) (quotations omitted); *see also Hill*, 474 U.S. at 59. To meet this burden, a defendant has to offer more than *post hoc* assertions "about how he would have pleaded but for his attorney's deficiencies." *Lee*, 582 U.S. at 369. Courts "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*; *United States v. Karagianis*, 142 F.4th 980, 987 (7th Cir. 2025). The court need not analyze deficient performance if the alleged deficiency didn't prejudice the defendant. *Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001).

Mr. Pearson first argues his counsel was ineffective because she failed to tell him what drug weight would be used at sentencing. He says, if he had known at sentencing his base offense level would be calculated based on the total weight of his relevant conduct (nearly 1350 grams) instead of five grams (his offense of conviction), he would not have pleaded guilty. The record provides no evidence, either before or contemporaneously, to support this new assertion.

Indeed, the record counters this. Both his plea agreement and the court, during his plea colloquy, advised him that no one could tell him for sure what sentence he would receive. In his plea agreement, which he read and reviewed with counsel before signing, he acknowledged that a person convicted under § 841(a)(1) could be sentenced between 5-40 years [24 ¶ 9(c)]. He understood that the court would use the sentencing guidelines to calculate a recommended range for sentencing, but this was "advisory only" and "the specific sentence to be imposed [would] be determined by the judge" after considering relevant information [*id.* ¶ 9(d)]. The plea agreement informed him that the concept of relevant conduct would play a role in applying the sentencing

4

guidelines [*id.*]. He understood that, though the government would dismiss the remaining counts in the indictment (counts 1, 2, and 4), "the facts underlying those counts may be relevant to [his] sentencing guidelines calculation and [his] sentence" [*id.* ¶ 9(g)].

At the plea hearing, the court confirmed Mr. Pearson's understanding of the plea agreement [50 Tr. 5]. The court explained that, though the guidelines would play a role in deciding his sentence, the court need not pick a sentence within that recommended range [*id.* Tr. 14]. He understood that the guidelines would pose questions to the court, which it would answer to arrive at a recommended range, and he confirmed that he and his counsel had reviewed the guidelines to get a feel for how they might play out [*id.* Tr. 14-15]. The court explained that "no one can say for sure what sentence the court will reach" and that the court "may reach a sentence that [he] expects or perhaps a sentence [he doesn't] expect" or a "sentence [he has] discussed with [his counsel] as a possibility or perhaps a sentence [he has] not discussed with [his counsel] as a possibility. And merely because the court decided a sentence that [he] didn't expect or one [he] had not discussed with his counsel as a possibility, even if that meant that [his] sentence was longer than perhaps [he] expected, [he] would not have the right to withdraw from [his] plea or [his] plea agreement because the court made that decision" [*id.* Tr. 15-16]. The court explained his sentence could be longer than he expected [Tr. 15]. Mr. Pearson acknowledged the potential penalties, including that the court could sentence him to a maximum 40 years [*id.* Tr. 13]. He testified under oath that no one had made promises or predictions as to what sentence he would receive [*id.* Tr. 19-20]. Mr. Pearson testified he understood all this, and he still wished to plead guilty [*id.* Tr. 22].

What is more, as part of the factual basis for plea, Mr. Pearson specifically admitted that, on one occasion, he sold about 900 grams of methamphetamine [*id.* Tr. 12] and an additional 450

5

grams a week before [*id.*]. One could not reasonably expect that he would be sentenced merely for five grams when he admitted to 1350 grams. Though certain statements made at a plea hearing may be impacted by a counsel's constitutionally ineffective actions, *Hurlow*, 726 F.3d at 967, a court's colloquy can "ameliorate the adverse impact of his counsel's misinformation," *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (quoting *Moore*, 348 F.3d at 243)).

The plea agreement and plea colloquy provide the only real contemporaneous evidence as to whether Mr. Pearson would still have pleaded guilty knowing that his sentence could variably run the gamut of 5-40 years, that his sentence might be longer than he expected, that his sentence might exceed any possibility that he had discussed with counsel, that he was proceeding without any promises or predictions as to what his sentence might be, and that he was admitting to distributing approximately 1350 grams of methamphetamine. His unsworn petition offers nothing but a conclusion to overcome what the court credits by way of his prior sworn statements. *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009). Having testified that he understood that the court might impose a sentence that he didn't discuss with his attorney as a possibility, he "cannot now be heard to complain that he would not have pled guilty if he had known his sentence would be more severe than his lawyer predicted." *Bethel v. United States*, 458 F.3d 711, 718 (7th Cir. 2006). He hasn't shown any prejudice. *See Strickland*, 466 U.S. at 688.

Mr. Pearson also says his counsel failed to hold the government to its agreement regarding the safety valve. He argues that he should have received a 60-month sentence. But Mr. Pearson received the benefit of the safety valve—indeed, because he qualified, the court reduced his offense level by two levels. U.S.S.G. §§ 2D1.1(b)(18), 5C1.2(a). To the extent he might contend that the safety valve caps his sentence at five years, this is a misunderstanding of the law. The safety valve does not convert a statutory minimum sentence into a new statutory maximum.

6

Instead, it permits the court to sentence below an otherwise applicable mandatory minimum, though that was not appropriate as a sentence under 18 U.S.C. § 3553(a). Because he received the benefit of the safety valve in calculating the recommended guideline range, there was nothing more for his trial counsel to do. Mr. Pearson accordingly hasn't shown deficient performance or prejudice. *See Strickland*, 466 U.S. at 688.

Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Cases. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted). Based on the petition's clear lack of a constitutional or other qualifying violation, no reasonable jurist could debate whether this petition should be resolved in a different manner.

Accordingly, the court thus DENIES Mr. Pearson's § 2255 petition [48] and DENIES a certificate of appealability. This order terminates the civil case.

SO ORDERED.

February 26, 2026            *s/ Damon R. Leichty*
                             Judge, United States District Court